IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TIMMY W. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 08-4050-JAR-DWB |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| ———————————————————————— | ) |

REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) under sections 216(i), and 223 of the Social Security Act.  42 U.S.C. §§ 416(i), and 423(hereinafter the Act).  Finding error as alleged by plaintiff, the court recommends the Commissioner's decision be reversed and the case be remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

I.  Background

Plaintiff applied for DIB alleging inability to work since Mar. 13, 2005.  (R. 23, 89-94).[1]  The application was denied

_____

[1]The Commissioner's "List of Exhibits" is deficient in identifying the exhibits in Sections A, B, and D of the 600-page administrative record filed in this case.  (R. 1).  The "List of

initially and upon reconsideration, and plaintiff requested a
hearing before an Administrative Law Judge (ALJ).  (R. 23, 63,
64, 65).  An ALJ hearing at which plaintiff was represented by an
attorney was held Mar. 7, 2007, and testimony was taken from
plaintiff and plaintiff's wife.  (R. 23, 566-600).  A vocational
expert was present but did not testify.  (R. 23, 566-67).  After
the hearing, ALJ Robert J. Burbank posed interrogatories to and
received responses from the vocational expert who appeared at the
hearing, Mr. Danny R. Zumalt, and a medical expert, Dr. Anne E.
Winkler.  (R. 23, 187-90, 557-63).  By letter, plaintiff declined
to respond to either set of interrogatory responses.  (R. 23,
186, 191).

On Jul. 17, 2007, the ALJ issued a decision finding
plaintiff is not disabled within the meaning of the Act, and
denying the application for benefits.  (R. 23-36).  Specifically,
the ALJ found that plaintiff is insured through Dec. 31, 2010,

---

Exhibits" treats each of Sections A, B, and D of the
administrative record as but a single exhibit, although those
sections consist of many separate exhibits.  Compare (R. 1)(Ex. 1
A, "Payment Documents/Decisions;" Ex. 1 B, "Jurisdictional
Documents/Notices;" and Ex. 1 D, "Non-Disability Development,")
with (R. 63-94).

Contrary to the Commissioner's practice in this case, D.
Kan. Rule 7.6(a)(4) requires that an index of the "separately
labeled" exhibits attached to briefs or memoranda be provided to
the court.  The Commissioner may not avoid the stricture of the
local rule merely by failing to separately identify the
individual exhibits, and instead "separately labeling" as a
single unit, an entire group of exhibits.

Nonetheless, the court has searched out the applicable
documents and provided pinpoint citations herein.

has not engaged in substantial gainful activity since his alleged

onset date, and has impairments which are "severe" within the

meaning of the Act consisting of status/post pacemaker implant

and a seizure disorder.  (R. 25).  He found that plaintiff has

certain other impairments which are not "severe," including

hearing loss compensated by hearing aids, back pain, restless leg

syndrome, left hand surgery, deviated nasal septum, longstanding

nausea and diarrhea, and a mental disorder consisting of

depressive disorder, anxiety, and dysthymic disorder.  (R. 25-

27).  In discussing plaintiff's seizure disorder, the ALJ also

noted that plaintiff's "seizures were considered non-epileptic

and attributed to a conversion disorder."  (R. 26)(citing Exs.

15F, 19F/507[2](R. 470-82, 494-95, 499)).  The ALJ found that

---

[2]Exhibit 15F consists of two reports from an epileptologist,
Dr. DePadua, regarding a visit on Sept. 16, 2005.  (R. 470-82).
Exhibit 19F is a "Medical Source Statement - Mental" completed by
a nurse-practitioner, Carolyn Nye, who treated plaintiff for his
mental impairments between Sept. 2005 and May, 2006.  (R. 494-95,
348-58).  Nowhere in ARNP Nye's medical source statement is there
any reference to seizures, epilepsy, or conversion disorder.
Moreover, there is no page numbered 507 in Exhibit 19F.
      However, Exhibit 20F consists of treatment notes from
plaintiff's neurologist, Dr. Gamboa.  (R. 496-500).  The
treatment note dated Feb. 6, 2006 reflects that Dr. DePadua
thought plaintiff had non-epileptic seizures "possibly secondary
to conversion disorder."  (R. 499).  On the lower right-hand
corner of the Feb. 6, 2006 treatment note is a handwritten number
reflecting the page number of that document within the Part F
exhibits--307.  Id.  Moreover, the page number is handwritten and
at first glance appears to be "507."
      Because the Feb. 6, 2006 treatment note is the document
which contains the facts cited by the ALJ, because Exhibit 19F in
no way relates to the facts cited, and because the handwritten
page number on this document appears to be "507" as reflected in

plaintiff does not have any impairment or combination of impairments that meets or equals the severity of a Listed impairment, and specifically considered Listings 4.02, 4.04, 4.05, 11.02, 11.03, and 12.02.  (R. 28-29).

In assessing plaintiff's residual functional capacity (RFC), the ALJ weighed the medical opinions of record, and considered the credibility of plaintiff's and plaintiff's wife's allegations of symptoms resulting from plaintiff's impairments.  (R. 29-34). The ALJ found the allegations of plaintiff and his wife only partially credible (R. 32), gave substantial weight to Dr. Winkler's opinion except to the extent he gave some credibility to plaintiff's allegations of lifting restrictions (R. 33), gave controlling weight to the opinion of Dr. Gamboa, id., discounted the opinion of Ms. Nye (R. 33-34), and noted that he was "in general agreement with the medical opinions of the state agency medical consultants regarding the claimant's ability to do light work-related activities with no more than mild limitations in mental functioning."  (R. 34).  He found plaintiff has the RFC for light work, excluding "work involving the use of ladders, ropes, or scaffolds, or work performed at heights."  (R. 29).

The ALJ found plaintiff unable to perform his past relevant work, but found jobs existing in significant numbers in the

the citation, the court finds the ALJ misstated his citation, and Ex. 20F/307 (R. 499) is the page which the ALJ intended to cite.

economy of which plaintiff is capable.  (R. 34-35).

Consequently, he determined that plaintiff is not disabled within

the meaning of the Act, and denied plaintiff's application.  (R.

36).  Plaintiff sought, but was denied Appeals Council review.

(R. 6-19).  So, the ALJ's decision is the final decision of the

Commissioner.  (R. 6-9); Blea v. Barnhart, 466 F.3d 903, 908

(10th Cir. 2006).  Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C.

§ 405(g).  Section 405(g) provides, "The findings of the

Commissioner as to any fact, if supported by substantial

evidence, shall be conclusive."  The court must determine whether

the factual findings are supported by substantial evidence in the

record and whether the ALJ applied the correct legal standard.

Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v.

Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial

evidence is more than a scintilla, but less than a preponderance,

and it is such evidence as a reasonable mind might accept to

support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200

(10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir.

1988).  The court may "neither reweigh the evidence nor

substitute [it's] judgment for that of the agency."  White, 287

F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs.,

933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395

F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether
substantial evidence supports the Commissioner's decision,
however, is not simply a quantitative exercise, for evidence is
not substantial if it is overwhelmed by other evidence or if it
constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v.
Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual
can establish that he has a physical or mental impairment which
prevents him from engaging in substantial gainful activity and is
expected to result in death or to last for a continuous period of
at least twelve months.  42 U.S.C. § 423(d).  The claimant's
impairments must be of such severity that he is not only unable
to perform his past relevant work, but cannot, considering his
age, education, and work experience, engage in any other
substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to
evaluate whether a claimant is disabled.  20 C.F.R. § 404.1520
(2007); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004);
Ray, 865 F.2d at 224.  "If a determination can be made at any of
the steps that a claimant is or is not disabled, evaluation under
a subsequent step is not necessary."  Williams v. Bowen, 844 F.2d
748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines
whether claimant has engaged in substantial gainful activity

-6-

since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51. If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's RFC. 20 C.F.R. § 416.920. This assessment is used at both step four and step five of the sequential evaluation process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether he is able to perform other work in the economy. Williams, 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

In a very sparse brief, plaintiff first claims that the ALJ erred in evaluating the record medical evidence regarding his mental impairments:  by finding his mental impairments not severe; by according excessive weight to a GAF[3] score; by

─────────────

[3]Global Assessment of Functioning.  A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning."  Am.

improperly rejecting the opinion of his treating nurse-practitioner, Ms. Nye; and by failing to properly consider his diagnosed conversion disorder.  (Pl. Br. 2-5).  He next claims error in the credibility analyses regarding his allegations and those of his wife.  Id. at 6-7.  The Commissioner argues that the ALJ properly determined that plaintiff's mental impairments are not severe (Comm'r Br. 7-10), that substantial evidence supports the ALJ's credibility determination, id. 10-13, that the ALJ discussed plaintiff's diagnosis of conversion disorder and non-epileptic seizures, id. 13, that the ALJ properly discounted the opinion of Ms. Nye, id. 13-15, and properly considered the GAF score at issue here.  Id. 15-16.

The court will address the allegations of error in the order they become relevant when applying the sequential evaluation process.  Because proper evaluation of the medical source opinions is necessary to a determination at step two of the process whether plaintiff's mental impairment(s) is severe, the court begins with consideration of the medical source opinions.

_____

Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 30 (4th ed. 1994)(hereinafter DSM-IV).  The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  Id. at 32.  GAF is a classification system providing objective evidence of a degree of mental impairment.  Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).

### III. Evaluation of the Medical Source Opinions

Plaintiff's only allegations of error relating to evaluation of the medical source opinions are that the ALJ improperly rejected the opinion of Ms. Nye, plaintiff's treating nurse-practitioner, and accorded excessive weight to a GAF score.  As plaintiff admits, Ms. Nye is an "other" medical source, not an "acceptable medical source."  (Pl. Br. 4).

In accordance with the regulations, an "acceptable medical source" includes only certain named classes of professionals: licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  20 C.F.R. § 404.1513.  Nurse-practitioners are among another group of health-care providers called "other" medical sources from whom the Commissioner will accept and use evidence showing the severity of a claimant's impairment(s) and how the impairment(s) affects claimant's ability to work.  Id. § 404.1513(d).

"Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." Id. § 404.1527(a)(2).  A "treating source" must be an "acceptable

medical source," Id. § 404.1502, and a medical opinion from a "treating source" may be given controlling weight in certain circumstances.  20 C.F.R. § 404.1527(d)(2).

Applying the regulations to Ms. Nye, she is an "other" medical source; she is not an "acceptable medical source" or a "treating source;" her medical source opinion is not, strictly speaking, a "medical opinion;" and can never be entitled to controlling weight.  However, it is undisputed that between Sept. 2005 and May 2006, Ms. Nye treated plaintiff at the High Plains Mental Health Center.  (R. 348-58).

Recognizing the reality that an increasing number of claimants have their medical care provided by health care providers who are not "acceptable medical sources"--nurse-practitioners, physician's assistants, social workers, and therapists--the Commissioner promulgated Social Security Ruling (SSR) 06-3p.  West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2008).  In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

-10-

<u>Id.</u>, Rulings, 330-31(emphasis added).

SSR 06-3p explains that where a treating source opinion is not given controlling weight, opinions of nurse-practitioners will be evaluated using the regulatory factors for weighing medical opinions.  <u>Id.</u> at 331-32(citing 20 C.F.R. § 404.1527). In the Ruling, the Commissioner recognizes that "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source."  <u>Id.</u> at 332.  The ruling explains that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." <u>Id.</u> at 333; <u>see also</u>, <u>Frantz v. Astrue</u>, 509 F.3d 1299, 1300 (10th Cir. 2007)(remanding for consideration of a nurse-practitioner's opinions in light of SSR 06-3p).

When the Commissioner does not give controlling weight to a treating physician's opinion on the nature and severity of the claimant's impairment(s), the Commissioner will apply certain regulatory factors as mentioned above for weighing all medical source opinions.  20 C.F.R. § 404.1527(d)(2)(I, ii) & (d)(3-6).

Those factors are:  (1) the length of the treatment relationship
and the frequency of examination; (2) the nature and extent of
the treatment relationship, including the treatment provided and
the kind of examination or testing performed; (3) the degree to
which the opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the provider is a specialist in the area upon
which an opinion is rendered; and (6) other factors brought to
the ALJ's attention which tend to support or contradict the
opinion.  <u>Id.</u> at § 404.1527(d)(2-6); <u>see also</u> <u>Goatcher v. Dep't</u>
<u>of Health & Human Serv.</u>, 52 F.3d 288, 290 (10th Cir. 1995).
Thus, in circumstances where a treating source opinion is not
given "controlling weight," and the evidence contains the
opinions of "other" medical sources along with "medical
opinions," the ALJ must weigh <u>all</u> of the opinions in accordance
with the regulatory factors, and must ensure that a reviewing
court can follow his reasoning in assigning weight to the
opinions.

     Here, the ALJ assigned controlling weight to the opinion of
Dr. Gamboa that (due to plaintiff's seizures) he was "not to
operate heavy or dangerous machinery, power tools, guns, or
motorized vehicles, to avoid working on roofs or climbing tall
ladders, to avoid swimming, boating, or fishing alone, to avoid
handling hot liquids, and to avoid working in front of open

-12-

flames." (R. 33)(citing Ex. 2F/40 (R. 214)). The ALJ gave substantial weight to Dr. Winkler's opinion that plaintiff "was able to perform postural maneuvers on a frequent basis, but had to avoid work hazards due to possible pacemaker problems." Id.(citing Ex. 24F (R. 557-63)). He stated he was "in general agreement with the medical opinions of the State agency medical consultants regarding the claimant's ability to do light work-related activities with no more than mild limitations in mental functioning." (R. 34)(citing Exs. 13F; 14F (R. 448-69)).

Neither Dr. Gamboa nor Dr. Winkler expressed an opinion regarding plaintiff's mental impairments. In fact, as the ALJ noted, Dr. Winkler specifically "declined to comment on the claimant's mental disorder." (R. 33)(citing Ex. 24F (R. 558)("I cannot comment on his psychiatric problems")). Therefore, Dr. Gamboa's opinion cannot be assumed to be controlling with regard to plaintiff's mental impairment(s). However, the record contains two opinions regarding plaintiff's mental impairment(s), that of Ms. Nye (R. 494-95) and that of the state agency psychologist, Dr. Schulman. (R. 448-61).

As the ALJ implied, Dr. Schulman opined that plaintiff had mild limitations in maintaining concentration, persistence, or pace and no limitations in the other three broad areas of mental functioning. (R. 458). However, contrary to the ALJ's assessment, Dr. Schulman found that plaintiff has major

-13-

depressive disorder, an affective disorder which is "severe" within the meaning of the Act, and Dr. Schulman suggested a "duration denial" because the mental impairment was not expected to last twelve months.  (R. 448, 451, 460).  Although the ALJ stated he was in "general agreement" with Dr. Schulman's opinion, he found that plaintiff's mental impairment is not "severe," whereas Dr. Schulman found the impairment "severe."  Dr. Schulman's opinion is probative evidence contrary to the ALJ's step two finding, but the ALJ did not address the ambiguity, and did not admit that, or explain why, he discounted Dr. Schulman's opinion.  In fact, he purported to be in "general agreement" with that opinion.  This is reversible error.

Of twenty individual mental abilities for work activity, Ms. Nye opined that plaintiff is moderately limited in eight abilities and markedly limited in the remaining twelve abilities. (R. 494-95).  The court has identified eleven reasons given by the ALJ for discounting Ms. Nye's opinion:  (1) she is not an acceptable medical source, (2) she saw the claimant only five times from September, 2005 through May, 2006, (3) she administered medication, but did not serve as a therapist, (4) she turned the claimant over to a psychiatrist in May, 2006 for more expert care, (5) her opinion is not supported by objective findings, (6) her opinion appears to be based upon plaintiff's self report, (7) she had not seen plaintiff for

approximately seven months prior to issuing the opinion, (8) her
opinion is not supported by her own records, (9) her opinion is
not supported by the observations of plaintiff's psychiatrist,
(10) her opinion is not supported by the observations of
plaintiff's therapist, and (11) her opinion is contradicted by
the GAF of 65 assigned at High Plains Mental Health Center's
intake session.  (R. 33-34).

A review of the record reveals that reasons 1-4, 7, and 10
are not denied by plaintiff and are supported by substantial
evidence in the record.  However, plaintiff argues that reasons
5, 6, 8, 9, and 11 are not supported by substantial evidence.

Plaintiff first argues that Ms. Nye's opinion is not
contradicted by the GAF score of 65, because the GAF score was
assigned at plaintiff's intake session whereas Ms. Nye's opinion
was based on several months of interaction and treatment of
plaintiff.  (Pl. Br. 3).  While this is a true statement of the
facts, it addresses the weight to be assigned each fact, not
whether the facts are contradictory.  It is not for the court to
reweigh the facts.  <u>White</u>, 287 F.3d at 905.

As the ALJ noted a GAF score of 65 is in the range of 61-70-
-"mild symptoms and generally functioning pretty well."  (R.
28)(citing DSM-IV)("**Some mild symptoms . . . but generally
functioning pretty well**")(DSM-IV at 32)(emphasis in DSM-IV).  A
finding that plaintiff is "generally functioning pretty well" is

-15-

not consistent with a finding that plaintiff is either moderately or markedly limited in all mental abilities related to work activity.  The record evidence supports the ALJ's finding that Ms. Nye's opinion is contradicted by the GAF score of 65.  Reason (11) is supported by substantial evidence in the record.

Plaintiff next asserts that reason (9) is erroneous because Ms. Nye's opinion is consistent with the observations of plaintiff's treating psychiatrist, Dr. Tan, and reason (5) is erroneous because Ms. Nye's opinion is consistent with Dr. Schulman's Psychiatric Review Technique Form.  (Pl. Br. 3). Neither ALJ Burbank nor plaintiff have provided specific citation to record evidence which supports a finding of consistency or inconsistency between Ms. Nye's opinion and the psychiatrist's opinion or the objective evidence.  However, the court's review if the record finds evidentiary support for plaintiff's argument. Dr. Tan noted that plaintiff was having problems with concentration and attention (R. 346), and that plaintiff was "losing time," i.e. forgetting the time and the date.  (R. 493). While this is slight support for Ms. Nye's opinions, it is contrary to the ALJ's assertion (without explanation or citation) that Ms. Nye's opinion is not supported by the observations of plaintiff's psychiatrist.

In the same fashion, Dr. Schulman's opinion that plaintiff had a severe mental impairment beginning Jun. 2005 is additional

objective record evidence providing at least tangential support
for Ms. Nye's opinion.  While Dr. Schulman opined in Sept. 2005
that plaintiff's severe mental impairment would not last beyond
Jun. 2006, Dr. Schulman did not have the benefit of Ms. Nye's
opinion or treatment notes, or the treatment records completed
thereafter.  Moreover, the ALJ did not find that plaintiff's
mental impairment was not severe for a twelve month duration, he
found the impairment was not severe.  The evidence does not
support reasons (5) and (9).

Reason (6) (that Ms. Nye's opinion appears to be based upon
plaintiff's self-report) is erroneous as a matter of law.  The
Tenth Circuit "held years ago that an ALJ's assertion that a
family doctor naturally advocates his patient's cause is not a
good reason to reject his opinion as a treating physician."
McGoffin v. Barnhart, 288 F.3d 1248, 1253 (10th Cir. 2002).  More
recently, the Tenth Circuit has specifically addressed the
practice of rejecting a medical source opinion because it is
based upon the claimant's subjective complaints.  Langley v.
Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004); Victory v.
Barnhart, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005).  If an ALJ
is to discount a physician's opinion because it is based upon
plaintiff's subjective complaints, he must at least point to
record evidence in the physician's reports or treatment notes
which justify a finding that the physician's opinion is based

-17-

upon plaintiff's subjective complaints.  Langley, 373 F.3d at
1121(nothing in the physician's reports indicate he relied only
on plaintiff's subjective complaints); Victory, 121 Fed. Appx. at
823)(the ALJ's conclusion was without support in the record).
The ALJ did not point to an evidentiary basis in Ms. Nye's
treatment records, in Ms. Nye's opinion, or elsewhere in the
record to support a finding that Ms. Nye's opinion was based on
plaintiff's self-report.  It was error to discount her opinion on
that basis.

        Finally, the evidence does not support the ALJ's reason (8)
(that Ms. Nye's opinion is not supported by her treatment
records).  The treatment records provide some support for Ms.
Nye's opinion--which the ALJ did not discuss and did not attempt
to reconcile.  On Feb. 17, 2006, Ms. Nye noted that "Tim is just
struggling in all spheres right now," and "is really struggling
with his current situation."  (R. 351).  On April 21, 2006, Ms.
Nye noted that plaintiff "continues to demonstrate a great deal
of difficulty in coping," and that he "is clearly struggling."
(R. 349).  The ALJ erred in reason (8) because Ms. Nye's
treatment records provide some support for her opinion.

        The court finds that the ALJ erred in weighing the opinions
of Ms. Nye and Dr. Schulman regarding plaintiff's mental
impairments.  While there is evidence tending to support the
ALJ's findings, there is also evidence supporting a different

finding.  The court may not reweigh the evidence and determine what weight should be given Ms. Nye's and Dr. Schulman's opinions.  White, 287 F.3d at 905.  Remand is necessary for the Commissioner to properly weigh these opinions, and explain the evidentiary basis for his findings in that regard.

The court does not intend to imply that on remand the Commissioner must give substantial weight to Ms. Nye's opinion.  Rather, the Commissioner must explain his weighing of the opinions, acknowledging the evidence which is contrary to his determination and explaining how the evidence was weighed.

## IV.  Step Two

Plaintiff claims the ALJ erred at step two of the sequential evaluation process in finding that plaintiff's mental impairment(s) is not "severe" within the meaning of the Act.  The Commissioner argues that the ALJ applied the psychiatric review technique, reviewed the four broad areas of mental functioning, and the record evidence supports his findings of:  no significant limitations in activities of daily living; no limitation in maintaining social functioning; mild limitations in maintaining concentration, persistence, or pace; and no episodes of deterioration or decompensation.  (Comm'r Br. 8-10).  Based upon these findings and 20 C.F.R. § 404.1520a(d)(1), the Commissioner argues that it was proper for the ALJ to find that plaintiff's mental impairment(s) is not severe.  Id. at 10.

-19-

An impairment is not considered severe if it does not significantly limit plaintiff's ability to do basic work activities. 20 C.F.R. § 404.1521. The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment at step two of the sequential evaluation process, plaintiff must make only a "de minimis" showing. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). Plaintiff need only show that an impairment would have more than a minimal effect on his ability to do basic work activities. Williams, 844 F.2d at 751. However, he must show more than the mere presence of a condition or ailment. Id. (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on plaintiff's ability to do basic work activities, it could not prevent plaintiff from engaging in substantial work activity and will not be considered severe. Hinkle, 132 F.3d at 1352.

As the Commissioner's brief suggests, the Commissioner has promulgated a Psychiatric Review Technique for evaluating mental impairments. 20 C.F.R. § 404.1520a. In evaluating the severity of mental impairments at step two, the technique provides for rating the degree of functional limitation in each of four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Id. § 404.1520a(c). After rating the degree of

limitation in each functional area, the Commissioner determines
the severity of plaintiff's mental impairments.  Id.
§ 404.1520a(d).

When the first three functional areas are rated as "none" or
"mild," and the fourth area is rated as "none," the agency will
generally conclude at step two of the sequential evaluation
process that plaintiff's mental impairments are not severe
"unless the evidence otherwise indicates that there is more than
a minimal limitation in [plaintiff's] ability to do basic work
activities."  Id. § 404.1520a(d)(1).  "Work-related mental
activities generally required by competitive, remunerative work
include the abilities to:  understand, carry out, and remember
instructions; use judgment in making work-related decisions;
respond appropriately to supervision, co-workers and work
situations; and deal with changes in a routine work setting."
SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 143, 149
(Supp. 2008); see also 20 C.F.R. § 404.1521(b)(3-6)(giving
precisely the same examples of basic mental work activities).

As did the ALJ, Dr. Schulman found only mild limitations in
the first three functional areas and no episodes of
decompensation.  (R. 458).  Nonetheless, Dr. Schulman found that
plaintiff's mental impairment is severe (R. 448), thus raising
the inference that Dr. Schulman found that "the evidence
otherwise indicates that there is more than a minimal limitation

in [plaintiff's] ability to do basic work activities."  20 C.F.R.
§ 404.1520a(d)(1).

Moreover, as plaintiff argues, Ms. Nye opined that plaintiff
is moderately or markedly limited in every one of the mental
activities generally required by competitive, remunerative work.
If, on remand, any of Ms. Nye's relevant limitations is found to
be appropriate, that evidence constitutes more than a minimal
effect on plaintiff's ability to do basic work activities and
also calls into question the ALJ's findings regarding the four
mental functional areas.  Nonetheless, such a finding would
constitute evidence indicating more than a minimal limitation in
plaintiff's ability to perform work activities, and would require
a further finding that plaintiff's mental impairment is "severe"
even if the ALJ properly found only mild limitations in the first
three mental functional areas and no episodes of decompensation.

In either case, it was error for the ALJ to find that
plaintiff's mental impairment is not "severe" within the meaning
of the Act without properly discounting the opinions of Dr.
Schulman and Ms. Nye.  Remand is necessary for the Commissioner
to consider whether plaintiff's mental impairment(s) is "severe"
within the meaning of the Act after properly weighing the medical
source opinions and acknowledging that Dr. Schulman opined that
plaintiff had a "severe" mental impairment.

In his final point regarding evaluation of mental impairment(s), plaintiff argues that the ALJ erred in his consideration of the diagnosis of conversion disorder. (Pl. Br. 5). The Commissioner argues that the ALJ properly "discussed Plaintiff's diagnosis of a conversion disorder and non-epileptic seizures" and that "objective medical evidence of record shows that Plaintiff's seizures were non-epileptic and attributed to a conversion disorder." (Comm'r Br. 13).

Here, the ALJ found that plaintiff has a "severe" seizure disorder and a nonsevere mental disorder. (R. 25). As discussed supra at 3, the ALJ cited medical evidence that plaintiff's "seizures were considered non-epileptic and attributed to a conversion disorder." (R. 26). He noted medical evidence to the effect (and appears to have accepted) that plaintiff's mental condition includes anxiety, major depressive disorder, and dysthymic disorder. (R. 27)(citing Exs. 5F/130; 8F; 18F (R. 301, 345-69, 487-93)).

What is missing from the decision (and also from the Commissioner's brief) is any acknowledgment that conversion disorder is a mental disorder which is one of a number of somatoform disorders. DSM-IV 445, 452-57. Because conversion disorder is a mental disorder, it is logically inconsistent for the ALJ to find that plaintiff has a "severe" seizure disorder which is attributed to conversion disorder, while at the same

time finding that plaintiff's mental disorder is not "severe."
Further, Dr. Schulman's opinion does not discuss that plaintiff
has been diagnosed with conversion disorder, and does not show
that he considered the evidence that plaintiff has a Somatoform
disorder.  (R. 454, 460).  Remand is necessary for the
Commissioner to consider the evidence regarding conversion
disorder, properly evaluate the medical source opinions, and
properly consider all of plaintiff's mental disorders when
evaluating plaintiff's claims of disability.  Perhaps it will be
necessary to seek a consultative evaluation of plaintiff's
conversion disorder and its interaction with his other mental
impairments.  That determination is for the Commissioner's
consideration in the first instance.

## V.   Credibility Determination

In his final allegation, plaintiff claims error in the ALJ's
credibility analyses regarding plaintiff's allegations and those
of his wife.  (Pl. Br. 6-7).  The Commissioner argues that
substantial evidence supports the credibility determination.
(Comm'r Br. 10-13).

Evaluation of the credibility of plaintiff's and his wife's
allegations will undoubtedly by affected by a proper evaluation
of the extent and severity of plaintiff's mental impairments, and
a proper evaluation of the medical source opinions regarding
plaintiff's mental impairments.  Therefore, it would be premature

at this juncture for the court to attempt to evaluate the credibility of plaintiff's and his wife's allegations.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 20th day of March 2009, at Wichita, Kansas.


s/Donald W. Bostwick
**DONALD W. BOSTWICK**
**United States Magistrate Judge**

-25-